UNITED STATES DISTRICT COURT
District of Minnesota
Criminal No. 23-160 (NEB/JFD)


UNITED STATES OF AMERICA,

Plaintiff,

v.

KEON PRUITT (4),

Defendants

**GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT KEON PRUITT'S MOTION TO REOPEN DETENTION HEARING**


The United States of America, by its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, Justin A. Wesley and Samantha H. Bates, Assistant United States Attorneys, and Brian W. Lynch, Trial Attorney, United States Department of Justice Organized Crime & Gang Section, respectfully move this Court to deny the defendant's motion to return to state custody.[1] The United States does not oppose reopening the detention hearing itself, but does oppose the return of the defendant to state custody based on the Bail Reform Act

## APPLICABLE LAW

A defendant is bound by federal law when they are charged in federal court and making a request to return to state custody. As Chief Justice Taft originally stated in *Ponzi v. Fessnden*:

---

[1] DCD 316.

1

One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. In re Andrews, (D.C.) 236 F. 300; United States v. Marrin, (D.C.) 227 F. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it.[2]

The defendant in this case was placed in temporary federal custody until the completion of federal criminal proceedings due to a writ of habeas corpus ad prosequendum filed in this case, and the defendant is without standing to contest the issuance of such a writ.[3] Because no detainer was lodged against the defendant, the IADA does not apply.[4]

The defendant's custody status is therefore subject to the Bail Reform Act.[5] For defendants pending trial, "a judicial officer…shall order that such person be released or detained, pending judicial proceedings, under this chapter."[6] There is a rebuttable presumption in this case that no condition or combination of conditions will reasonably assure the safety of any other person

---

[2] *Derengowski*, 377 F.2d at 224 (citing 258 U.S. 254, 260 (1922).

[3] 48 (Pruitt writ); *Derengowski v. U.S. Marshal, Minneapolis Office, Minn. Division,* 377 F.2d 223, 223-24 (8th Cir. 1967).

[4] *U.S. v. Mauro*, 436 U.S. 340, 361 (1978).

[5] 18 U.S.C. §§ 3141, et seq.

[6] 18 U.S.C. § 3141(a).

and the community.[7] The factors to be considered can be summarized as follows:

1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a controlled substance offense or firearm;

2) the weight of the evidence against the person;

3) the history and characteristics of the person; and

4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.

18 U.S.C. § 3142(g). Notably, there is no direction in the Bail Reform Act for the Court to consider the state custody status of the defendant.

## ARGUMENT

### A. The Bail Reform Act

The defendant's motion to be returned to state custody should be denied. To establish the first and second factors, the United States will be offering video footage of the brutal murder of an innocent civilian committed by the defendant and five of his accomplices, described in overt act 60 of the Indictment.[8] The United States will also be offering the defendant's state court plea transcript where he admits he was guilty of this murder for the benefit of a gang (the Highs). The first and second factors overwhelmingly weigh in favor of detention.

---

[7] 18 U.S.C. §§ 3142(e)(2) and (3)(B).
[8] Three of the accomplices are charged in this Indictment. The other two are juveniles.

3

To establish the third factor, the United States will be relying on the defendant's criminal history as detailed in his bond report. This factor also weighs in favor of detention.

Regarding the fourth factor, the United States could not find any binding case law to determine whether the defendant's state custody status is relevant. At least one 8th Circuit magistrate judge has determined that a federal defendant's inevitable return to state custody upon the conclusion of a writ is "largely irrelevant" to the Bail Reform Act.[9] Adopting a contrary position "would effectively mandate pretrial release from federal custody for any defendant appearing on a Writ."[10] Furthermore, "Congress could have specified, for example, that the fact a defendant would be returned to another jurisdiction's custody is a factor weighing in favor of releasing that defendant from federal custody."[11]

Even if the defendant's custody status is found to be relevant to the fourth factor, the United States intends to offer evidence that the defendant has been disciplined while in state custody for a gang-related fight on April 17, 2023. Pruitt was with other known Highs members and fought with other known Lows members over "talking shit about dead homies." Approximately six inmates were involved in the fight.

---

[9] *United States v. Dimmick*, 82 F.Supp.3d 866, 870 (N.D. Iowa, Central Division 2015).
[10] *Id.*
[11] *Id.*

Because detention is appropriate under the Bail Reform Act, and the defendant is charged with a federal offense, he should remain in federal custody under the care and custody of the Attorney General.

## B. The Defendant's Argument

The defendant argues he does not pose a flight risk because he "is already serving a horrendously long state-court prison sentence [where] there is no possibility that he will miss court appearances or endanger the safety of any person or the community."[12] He also refers to his prosecution in federal court as "superfluous."[13] Not only does this argument ignore the factors that the Bail Reform Act requires the Court to consider, but it trivializes the horrendous acts that the defendant and his five accomplices perpetrated on an innocent young man.

The defendant is a member of the Highs enterprise as outlined in the Indictment. He committed a brutal murder along with five other Highs members. He then entered into a plea negotiation with the state whereby his charged offense of First Degree Premediated Murder—which carries a mandatory life sentence without the possibility of parole—was dismissed, and he was allowed to plead to a lesser charge of Second Degree Intentional Murder. He received a sentence where he will be released in approximately 21 years, far short of the mandatory life term he was facing. Under the circumstances, the

---

[12] DCD 316 at 2.
[13] DCD 316 at 2.

prosecution of the defendant is anything but "superfluous."

The defendant also claims he does not pose a danger to any person. However, the defendant has already demonstrated he is a danger to other persons even while in custody by engaging in a gang fight less than two months ago. He then bragged about it in a letter he wrote, "me n CB ended up crashing the opps in C-House[.]"[14] The defendant further wrote "Mann we whooped they ass on Quayshawn[.]"[15]

In his prison letters, the defendant has also touched on his preference for prison over county jail. The defendant wrote that in prison, he has a 15 inch TV, a tablet, fan, ordered $78 Nike's, and referenced several other Highs members who were in custody with him. In another letter, the defendant wrote about how "you got way more freedom [sic] than the county", "prices cheaper to [sic]", and "once you get to Stillwater or Rush City its goin [sic] be way sweeter[.]" He also writes, "but A-house and B-house Gangland no kapp." Notably, his letters do not appear to reference the programming his motions rely on as the reason he should return to state custody.

Furthermore, his argument for returning to state custody is entirely speculative. He is classified as "close" custody by the Minnesota Department of Corrections, which means he can only be incarcerated at the Rush City, St.

---

[14] CB is the nickname of a known Highs member who was involved in the fight..
[15] "On Quayshawn" is a type of tribute or oath to the Highs based on Quayshawn Felton, a murdered Highs member.

Cloud, or Stillwater facilities. There is no evidence that he was going to be transferred to another facility, when he was going to be transferred, or what programming, if any, he was going to receive. The defendant's argument about receiving speculative programming at a facility where the defendant was not even incarcerated is likely not the "temporary release…necessary for preparation of the person's defense or for another compelling reason" contemplated by the Bail Reform Act.[16]

Finally, the defendant cites no law or authority in his motion. The defendant's state custody status has no relevance to the nature or circumstances of the offense charged, the weight of the evidence against him, or his history and characteristics. Even if it had some bearing on the fourth factor, the evidence and information before the Court inextricably points to a finding of detention.

The defendant essentially requests the Court to ignore the factors the Bail Reform Act mandates the Court to consider in determining whether detention is appropriate. The defendant does not even lay out a clear path for the Court to navigate the Bail Reform Act and return the defendant to the Minnesota Department of Corrections. Therefore, his motion should be denied.

---

[16] 18 U.S.C. § 3142(i).

## CONCLUSION

Because there are no conditions or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community, the defendant should be detained. The defendant should therefore be committed to the custody of the Attorney General and kept separate from persons awaiting or serving sentences. Because there are no other compelling reasons to temporarily return the defendant to state custody, the defendant's motion should be denied.

ANDREW M. LUGER
United States Attorney

/s *Justin A. Wesley*

BY:   JUSTIN A. WESLEY
Assistant U.S. Attorney